FILED
JUN 1 3 2007
6-13-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL TEMPLE and IKE HARDY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CHICAGO POLICE OFFICERS ) <br> MARGARET HOPKINS, STAR NO. ) <br> 5545; JEROME FINNIGAN, STAR NO. ) <br> 5167; FRANK VILLAREAL, STAR NO. ) <br> 10438; J. BURZINSKI, STAR NO. 3450, ) <br> individually and as Employee/Agents of ) <br> the City of Chicago, a Municipal ) <br> Corporation and THE CITY OF ) <br> CHICAGO, ) <br> ) <br> Defendants. ) | 07CV 3336 <br> JUDGE LEFKOW <br> MAGISTRATE JUDGE BROWN <br><br> MAGISTRATE <br><br> JURY DEMAND |

## COMPLAINT AT LAW

NOW COME, MICHAEL TEMPLE and IKE HARDY, by and through their attorney, JEFFREY J. NESLUND, and in complaining of the Defendants, CHICAGO POLICE OFFICERS MARGARET HOPKINS, STAR NO. 5545; JEROME FINNIGAN, STAR NO. 5167; FRANK VILLAREAL, STAR NO. 10438, J. BURZINSKI, STAR NO. 3450 and THE CITY OF CHICAGO, states as follows:

### INTRODUCTION

1. This is an action for civil damages brought pursuant to 42 U.S.C. Sec. 1983 for the deprivation of plaintiff's constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1331 and 1343.

1

2. Venue in this district is proper pursuant to 28 U.S.C sec. 1391 (b), because the facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

3. Plaintiffs, MICHAEL TEMPLE and IKE HARDY, are individuals who at all times relevant hereto were living in the Northern District of Illinois.

4. Defendants, CHICAGO POLICE OFFICERS MARGARET HOPKINS, STAR NO. 5545; JEROME FINNIGAN, STAR NO. 5167; FRANK VILLAREAL, STAR NO. 10438 and J. BURZINSKI, STAR NO. 3450, were at all times material hereto, duly appointed Chicago Police Officers employed by the City of Chicago acting in the capacity of sworn law enforcement officials.

## FACTUAL SUMMARY

5. On June 13, 2005, plaintiff MICHAEL TEMPLE was a passenger in a car driven by plaintiff, IKE HARDY.

6. The plaintiffs were rear ended by DEFENDNATS FINNIGAN and BURZINSKI while driving northbound on the Dan Ryan Expressway.

7. The force of the impact damaged the plaintiff's car and it stopped in the far left lane of northbound traffic on the Dan Ryan Expressway.

8. The DEFENDANT OFFICERS as well as additional Unknown Chicago Police Officer and Illinois State Troopers arrived at the scene.

9. DEFENDANT FINNIGAN punched plaintiff HARDY several times in the head as DEFENDANT FINNIGAN and DEFENDANT BURZINSKI pulled plaintiff HARDY from the driver's side of the car.

10. DEFENDANT HOPKINS slapped plaintiff HARDY in the face as he was placed into handcuffs and taken to a marked squad car.

2

11. DEFENDANT VILLAREAL and other Unknown Chicago Police Officers pulled plaintiff TEMPLE out of the passenger side window of the car, slammed him to the ground and placed him in handcuffs.

12. DEFENDANT HOPKINS, DEFENDANT VILLAREAL and other Unknown Chicago Police Officers kicked plaintiff TEMPLE while he was handcuffed on the ground.

13. Plaintiff TEMPLE was then placed across the back seat in an unmarked squad car and DEFENDANT HOPKINS repeatedly slammed the car door against the top of plaintiff TEMPLE's head.

14. The DEFENDANT OFFICERS took the plaintiffs and their vehicle to an abandoned lot near Chinatown.

15. The DEFENDANT OFFICERS tore apart the vehicle in an unsuccessful search for contraband.

16. Plaintiff TEMPLE was taken out of the unmarked squad car driven by DEFENDANT FINNIGAN and placed on the ground.

17. DEFENDANT FINNIGAN then went over to the police car containing Plaintiff HARDY and punched him in the right eye with his first, yelling, "tell us where the gun is!"

18. Plaintiff HARDY attempted to twist away from DEFENDANT FINNIGAN, who continued to punch HARDY in the back.

19. DEFENDANT HOPKINS then took out a .22 caliber handgun from her vest and handed it to DEFENDANT BURZINSKI.

20. DEFENDANT BURZINSKI attempted to place the .22 caliber handgun he received from DEFENDANT HOPKINS into the handcuffed hands of plaintiff HARDY.

3

21. An Unknown male white officer believed to be a superior officer of the DEFENDANTS then arrived in the abandoned lot.

22. DEFENDANT BURZINSKI displayed the .22 caliber handgun and said, "look what we found" to the unknown male white officer.

23. The PLAINTIFFS were then transported to the 4th Chicago Police District.

24. DEFENDANT FINNIGAN punched Plaintiff TEMPLE on the back of his head on the way to the 4th District. DEFENDANT FINNIGAN yelled out in pain, "If I broke my knuckle, I'm really going to fuck you up!"

25. DEFENDANT FINNIGAN then pulled over and repeatedly punched Plaintiff TEMPLE in the legs while DEFENDANT BURZINSKI held TEMPLE'S neck down on the seat.

26. Once they arrived at the 4th District, the DEFENDANT OFFICERS placed the PLAINTIFFS on a bench with one arm handcuffed to the wall.

27. The PLAINTIFFS were searched and $800.00 from TEMPLE'S sock and $1,500.00 from HARDY'S pocket were placed on a table by the DEFENDANT OFFICERS.

28. DEFENDANT BURZINSKI began to write a report and asked the other DEFENDANT OFFICERS if the car the PLAINTIFFS were in had a center counsel because that's where he'll say he found the gun.

29. DEFENDANT FINNIGAN asked DEFENDANT HOPKINS if the .22 caliber was defaced because that "would make it a better case."

30. As the PLAINTIFFS were being processed at the 4th District, DEFENDANT FINNIGAN placed his foot on top of PLAINTIFF HARDY'S right hand, and screamed, "what's your real name?" while DEFENDANT HOPKINS slapped HARDY in the face.

4

31. The DEFENDANTS took the PLAINTIFFS' money that had been on the table. Before leaving the 4th District, DEFENDANT FINNIGAN threatened both PLAINTIFFS not to say anything about the money.

32. DEFENDANTS FINNIGAN AND BURZINSKI made false statements to a Cook County Assistant State's Attorney that both PLAINTIFFS had confessed and knew a gun was present in the center counsel of the vehicle. The DEFENDANTS made these false statements in order to obtain approval of felony charges against the PLAINTIFFS.

33. The PLAINTIFFS were then charged with a felony offense of unlawful use of a weapon in Cook County case number 05 CR 15078.

34. Plaintiff HARDY, facing a prospect of a prolonged incarceration to contest the above misconduct of the DEFENDANT OFFICERS, plead guilty off arraignment in order to receive the minimum sentence.

35. The DEFENDANT OFFICERS FINNIGAN, VILLAREAL and HOPKINS were subsequently indicted by the Grand Jury of Cook County of multiple charges of criminal conduct and official misconduct.

36. The criminal charges against PLAINTIFF TEMPLE were dismissed by the Cook County State's Attorney's Office in a manner indicative of his innocence.

## COUNT I
## 42 U.S.C. § 1983: False Arrest/Unlawful Detention

37. Plaintiffs re-allege and incorporate paragraphs 1-36 as fully stated herein.

38. As described above, DEFENDANT OFFICERS falsely arrested and unlawfully detained Plaintiffs without justification and without probable cause.

39. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and specifically, the rights of the plaintiffs.

40. As a result of the above-described wrongful infringement of Plaintiffs' rights, Plaintiffs suffered damages, including but not limited to mental distress and anguish.

## COUNT II
### State Law Claim: False Imprisonment

41. Plaintiffs re-allege and incorporate paragraphs 1-36 above as fully stated herein.

42. Plaintiffs were arrested and imprisoned, and thereby had their liberty to move about unlawfully restrained, despite DEFENDANT OFFICERS' knowledge that there was no probable cause for doing so.

43. DEFENDANT OFFICERS' action set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

44. As a result of the above-described wrongful infringement of Plaintiffs' rights, Plaintiffs suffered damages, including but not limited to mental distress and anguish.

45. The misconduct described in this Count was undertaken by the DEFENDANT OFFICERS within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

## COUNT III
### State Law Claim: Malicious Prosecution

46. Plaintiffs re-allege and incorporate paragraphs 1-36 above as fully stated herein.

47. Plaintiffs were improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in

6

injury, and all such proceedings were terminated in Plaintiffs' favor in a manner indicative of innocence.

48. DEFENDANT OFFICERS accused Plaintiffs of criminal activity knowing those accusations to be without probable cause, and they made written and other statements with the intent of exerting influence to institute and continue judicial proceedings.

49. Statements of DEFENDANT OFFICERS regarding Plaintiffs' alleged culpability were made with knowledge that the statements were false and perjured. In so doing, the DEFENDANT OFFICERS fabricated evidence and withheld exculpatory information.

50. The misconduct described in this Count was undertaken with malice, willfulness, reckless indifference to the rights of others.

51. As a result of the above-described wrongful infringement of Plaintiff's rights, he has suffered financial and other damages, including but not limited to substantial mental stress and anguish.

52. The misconduct described in this Count was undertaken by the DEFENDANT OFFICERS within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

## COUNT IV
### Common Law Battery, Defendants Margaret Hopkins; Jerome Finnigan; Frank Villareal and J. Burzinski

53. Plaintiffs reallege paragraphs 1 through 36, as if fully set forth at this point.

54. The acts of the DEFENDANT OFFICERS in striking and kicking the PLAINTIFFS as alleged above, was a willful and wanton act of violence against the Plaintiffs, and was committed without any cause or justification.

7

55. As a direct and proximate cause of the wrongful acts of defendants, plaintiffs, MICHAEL TEMPLE and IKE HARDY, suffered physical and psychological injuries.

## COUNT V
### Intentional Infliction of Emotional Distress Against City and Officers

56. Plaintiffs reallege paragraphs 1 through 36 above, as if fully set forth here.

57. The above-detailed conduct by the defendants was extreme and outrageous, exceeding all bounds of human decency.

58. Defendants performed the acts detailed above with the intent of inflicting severe emotional distress on plaintiffs or with knowledge of the high probability that the conduct would cause such distress.

59. As a direct and proximate result of this conduct, plaintiffs did in fact suffer severe emotional distress, resulting in injury to their minds, bodies, and nervous systems, including loss of sleep, mental anguish, nightmares, anxiety attacks, stress disorders, phobias, and flashbacks.

60. As of the filing of this Complaint, plaintiffs continue to suffer from the above described injuries caused by the extreme and outrageous conduct of the defendants.

## COUNT VI
### Conversion

61. Plaintiffs reallege paragraphs 1 through 36 above, as if fully set forth here.

62. As detailed above, defendants took and destroyed Plaintiffs MICHAEL TEMPLE and IKE HARDY's personal property under color of law without consent and never returned such property.

63. Defendants denied and continue to deny MICHAEL TEMPLE's and IKE HARDY's use and control of such property.

64. As a direct and proximate result of this conduct, MICHAEL TEMPLE and IKE HARDY suffered damages from their inability to use said property and the replacement of said property.

## COUNT VII
### Willful and Wanton Conduct Against the City of Chicago

65. Plaintiffs re-allege and incorporate paragraphs 1-36 above as fully stated herein.

66. Prior to June 13, 2005, the City of Chicago, acting through its employees/agents in the Office of Professional Standards and the Internal Affairs Division of the Chicago Police Department, received numerous citizen complaints of misconduct and criminal acts by the Defendant Officers working in their capacity as Chicago Police Officers.

67. On and before June 13, 2005, the City of Chicago, acting through its employees/agents in the Office of Professional Standards and the Internal Affairs Division of the Chicago Police Department, had a duty to refrain from or engage in, both directly and indirectly, acts and/or omissions exhibiting reckless disregard and utter indifference in the execution and enforcement of the law.

68. DEFENDANTS FINNIGAN, VILLAREAL and HOPSKINS have all been indicted by a Cook County Grand Jury on numerous cases alleging criminal conduct while engaged in their duties as Chicago Police Officers.

69. That each of the Grand Jury indictments against DEFENDANTS FINNIGAN, VILLAREAL and HOPKINS allege criminal conduct similar to the misconduct alleged in paragraphs 1 through 35 above.

70. That for a long time prior to June 13, 2005, the City of Chicago, acting through its

employee/agents in the Office of Professional Standards and Internal Affairs Division of the Chicago Police Department, knew of a pattern of criminal activity alleged by citizens against the DEFENDANTS.

71. The City of Chicago, acting through its employee/agents in the Office of Professional Standards and Internal Affairs Division of the Chicago Police Department, breached its duty and was willful and wanton in one or more of the following acts and/or omissions:

    A. With a conscious disregard or utter indifference for the safety of others, failed to properly and adequately investigate prior citizen complaints of misconduct regarding the Defendant Officers;

    B. With a conscious disregard or utter indifference to the safety of others, failed to properly discipline the Defendant Officers for citizen complaints of misconduct;

    C. With a conscious disregard or utter indifference for the safety of the public, allowed the Defendant Officers to remain active Chicago Police Officers after the City knew, or in the exercise of reasonable care should have known, of the pattern of criminal conduct by the Defendant Officers.

72. As a proximate cause of one or more of the aforesaid willful and wanton acts and/or omissions described above, the defendants were allowed to remain employed as Chicago Police Officers and falsely arrest and maliciously prosecute the plaintiffs.

## **REQUEST FOR RELIEF**

73. Plaintiffs, MICHAEL TEMPLE and IKE HARDY, respectfully request that the Court:

a. Enter judgment in his favor and against Defendants, CHICAGO POLICE OFFICERS MARGARET HOPKINS, STAR NO. 5545; JEROME FINNIGAN, STAR NO. 5167; FRANK VILLAREAL, STAR NO. 10438, J. BURZINSKI, STAR NO. 3450 and THE CITY OF CHICAGO;

b. Award compensatory damages against Defendants, CHICAGO POLICE OFFICERS MARGARET HOPKINS, STAR NO. 5545; JEROME FINNIGAN, STAR NO. 5167; FRANK VILLAREAL, STAR NO. 10438, J. BURZINSKI, STAR NO. 3450; and THE CITY OF CHICAGO;

c. Award attorneys' fees against Defendants, CHICAGO POLICE OFFICERS MARGARET HOPKINS, STAR NO. 5545; JEROME FINNIGAN, STAR NO. 5167; FRANK VILLAREAL, STAR NO. 10438, J. BURZINSKI, STAR NO. 3450 and THE CITY OF CHICAGO;

d. Award punitive damages against CHICAGO POLICE OFFICERS MARGARET HOPKINS, STAR NO. 5545; JEROME FINNIGAN, STAR NO. 5167; FRANK VILLAREAL, STAR NO. 10438, J. BURZINSKI, STAR NO. 345092 and THE CITY OF CHICAGO; in their individual capacities; and

e. Grant any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs, MICHAEL TEMPLE and IKE HARDY, demand a trial by jury under the Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

_____
JEFFREY J. NESLUND
Attorney for Plaintiffs

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
150 North Wacker Drive
Suite 2460
Chicago, Illinois 60606
(312) 223-1100

11